UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

|  |  |  |
|---|---|---|
| EMILY TOMPKINS, individually and on behalf all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. |
| MENU FOODS MIDWEST CORPORATION, MENU FOODS INCOME FUND, MENU FOODS LIMITED, MENU FOODS INC., MENU FOODS HOLDINGS, INC., THE PROCTER & GAMBLE COMPANY, THE IAMS COMPANY, SAFEWAY INC., THE KROGER CO., PETCO ANIMAL SUPPLIES, INC., PETCO ANIMAL SUPPLIES STORES, INC.,  and JOHN DOES 1 through 100, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) ) ) | |

---

**CLASS ACTION COMPLAINT AND JURY DEMAND**

---

Plaintiff, Emily Tompkins, individually and on behalf of all others similarly situated, by

and through her attorneys, Thomaidis Law, LLC and Progressive Law Group LLC,

complain against Defendants, upon personal knowledge as to herself, and as to all other



EXHIBIT

F

Dockets.Justia.com

matters upon information and belief based upon, among other things, the investigation made by their attorneys, as follows:

## INTRODUCTION

1.    This is a class action seeking punitive damages and/or other redress for consumers who purchased pet food products designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.

2.    Plaintiff and similarly situated consumers have unwittingly fed their pets the recalled products which caused their injury or death.

3.    Certain of the Defendants could have prevented the losses to Plaintiff's and scores of other Class members' pets, but for their wanton conduct and failure to warn the public. Menu Foods, despite learning of the danger to pets' health in their pet food products days, weeks, and even months before March 16, 2007, did not announce a pet food recall, or provide any public notice of such dangers, until that date.

4.    Due to Defendants' conduct, not only are many affected pet owners living with the loss of their pets, but also, pet owners have incurred and will continue to suffer damages including veterinarian bills, cremation expenses, and pet food costs.

## PARTIES

5.    Plaintiff Tompkins is a citizen of the State of Colorado and resides in Denver. Plaintiff Tompkins' cat, Grover, developed renal failure and died as a result of eating the Defendants' pet food at issue.  Plaintiff Tompkins routinely purchased Iams Select Bites in Sauce and Iams Choice Cuts in Gravy from Safeway supermarkets owned/operated by Defendant Safeway Inc., from King Snoopers supermarket stores owned/operated by

2

Defendant The Kroger Co., and from Petco retail stores owned/operated by Defendants Petco Animal Supplies, Inc. and Petco Animal Supplies Stores, Inc., in Denver, Colorado, in January and February 2007, between September 2006 and December 2006, and prior thereto.

8.      Defendant Menu Foods Income Fund (or the "Fund") is an unincorporated open-ended trust created in the year 2002 with its principal place of business in Streetsville, Ontario, Canada.

9.      The Fund owns and controls Defendant Menu Foods Limited, a Canadian company with its offices in Mississauga, Ontario, which, on information and belief, manages Menu Foods' United States operations and manufactures the pet food products at issue.

10.      Defendant Menu Foods Income Fund ("the Fund"), and Defendant Menu Foods Limited each claim to be the leading North American private-label manufacturer of so-called "wet pet food products," which are sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets.

11.      Defendant Menu Foods Midwest Corporation has its principal place of business in Emporia, Kansas, and is wholly owned by Menu Foods Holdings, Inc.  Most of the contaminated pet food batches originated from Menu Foods' manufacturing plant in Emporia, Kansas, which on information and belief is operated by Menu Foods Midwest Corporation.

12.      Defendant Menu Foods Inc., a New Jersey corporation wholly owned by Menu Foods Holdings, Inc., made a portion of the pet food products at issue.

3

13.     Defendant Menu Foods Holdings, Inc. is wholly owned by Menu Foods Limited and organized under the laws of the State of Delaware, and, on information and belief, holds the assets and/or securities of the Menu Foods Defendants' manufacturing facilities in the United States, including plants located in Kansas and South Dakota.

14.     Defendants, Menu Foods Income Fund, Menu Foods Limited, Menu Foods Midwest Corporation, Menu Foods Holdings, Inc., and/or Menu Foods, Inc., (collectively, "Menu Foods"), individually and collectively caused the "pet food products at issue" in this action to be manufactured, for or on behalf of other co-Defendants in this action and a host of other brands, producers, marketers and sellers of the pet food products at issue, for sale to consumers in Colorado and in other States. The actions of Menu Foods Income Fund alleged herein are undertaken on behalf of itself and each of these Menu Foods entities, who acted as agents for each other when perpetrating the conduct herein alleged and who do business under the name "Menu Foods."

15.     Menu Foods made the pet food products at issue and caused them to be placed into the stream of commerce in the State of Colorado and in the United States.

17.     Defendant, The Procter & Gamble Company ("P&G"), which acquired, and does business as The Iams Company, is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

18.     Defendant, The Iams Company ("Iams") is a corporation with its principle place of business in the State of Ohio, and is owned by P&G.

19.     P&G and the Iams Company (collectively, "the P&G Defendants") caused their brands of the consumer products at issue, including Eukanuba® and Iams® brand self-styled premium pet foods subject to the recall (e.g., the Iams Select Bites in Sauce and

4

Iams Chioice Cuts in Gravy products purchased by Plaintiff Tompkins), to be manufactured, and marketed, distributed and sold to consumers including Plaintiff, in Colorado and throughout the United States.

20.    Menu Foods makes the Eukanuba® and Iams® brand pet food products at issue for the P&G Defendants.

21.    Defendants Petco Animal Supplies, Inc. and Petco Animal Supplies Stores, Inc. (collectively herein, "Petco"), are each organized under the laws of the State of Delaware, share common officers and offices, and marketed and sold pet food products at issue on their website and in their "PETCO" retail stores in Colorado and nationwide.

22.    Defendant, Safeway Inc. is organized under the laws of the State of Delaware, and marketed and sold pet food products at issue at its retail stores (e.g., "Safeway" supermarkets) in Colorado and nationwide.

23.    Defendant, The Kroger Co. ("Kroger"), has its principal place of business in the State of Ohio, and owns and operates retail supermarkets doing business under such names as King Snoopers, Ralphs, Kroger, City Market, Dillions, Smith's Food & Drug Stores, Fry's, QFC, Baker's, Owen's, JayC, Hilander, Gerbes, and Pay Less.  Kroger marketed and sold pet food products at issue at its retail supermarkets in Colorado and nationwide.

24.    The true names and capacities of the Defendants sued in this Complaint as Does 1-100, inclusive, are currently unknown to Plaintiff, who therefore sue such Defendants by such fictitious names.  Each of the Defendants designated herein as a Doe Defendant is legally responsible in some manner for unlawful acts referred to in this Complaint. Plaintiff will seek leave of the Court to amend this Complaint to reflect the true names

5

and capacities of the Defendants designated herein as Doe Defendants when such

identities become known.

## JURISDICTION AND VENUE

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.  Defendants

systematically and continually do business in this District and in the State of Colorado.

Transactions giving rise, in substantial part, to each Plaintiff's action occurred in this

District.

26.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332.

The total amount at issue in this case exceeds $5,000,000.

## STATEMENT OF FACTS

### *The Conduct of Menu Foods.*

27.    Menu Foods makes the food found in about 100 varieties of the recalled pet food

products at issue.

28.    Menu Foods Income Fund's self-styled operating tenets are to "manufacture the

private-label wet pet food industry's most comprehensive product program with the

highest standards of quality" and to "satisfy the requirements of the ultimate consumers

(i.e., dogs and cats)."  In reality, Menu Foods falls short of these tenets, to the detriment

of affected pet owners like Plaintiff.

29.    The U.S. Food & Drug Administration (FDA) has reported that sample testing of

wheat gluten Menu Foods used to make the pet food products at issue, and of the

products themselves, reveals the presence of melamine, which the FDA has identified as

one source of the contamination in the recalled pet food.

30.    Menu Foods Income Fund announced, on March 16, 2007, the recall of "cuts and gravy" style pet food in cans and pouches (including without limitation Iams brand pet food products purchased by Plaintiff Tompkins), which Menu Foods manufactured between December 3, 2006 and March 6, 2007, at two of their United States facilities, for more than 90 pet food brands purchased by Plaintiff and the other Class members.  The Fund stated at that time that products not identified in the recall could continue to be used.

31.    On March 16, 2007, Menu Foods Income Fund also announced that the recall dates coincided with the introduction of an ingredient from a new supplier, and that it had received complaints about the impact on the renal health of the pets consuming the products at issue.

32.    However, Menu Foods discontinued using the supplier of the ingredient, which they believed to be attributable to the contamination of pet food products at issue, on March 6, 2007 – a full ten days prior to announcing the recall.

33.    In fact, Menu Foods reported to the FDA that it had received complaints that cats and dogs who had eaten its food had died or experienced kidney failure as early as February 20, 2007, almost one month prior to the recall.

34.    Menu Foods received similar telephone complaints long before the recall, as early as December 2006, from pet owners indicating that their pets had fallen ill from eating the very same "cuts and gravy" style pet food products at issue.

35.    Weeks before the recall, Menu Foods, instead of alerting the public, initiated food "tasting trials" resulting in the death of seven of the forty to fifty dogs and cats tested, by March 2, 2007, five days after the testing started.

7

36.    Despite such red flags well before the recall, Menu Foods held off on the recall until March 16, 2007, and at that time announced only that the recall was purely precautionary and merely a "proactive step out of an abundance of caution, because the health and well being of pets is paramount to the [Menu Foods Income] Fund."

37.    It was not until March 24, 2007, that the Menu Foods Defendants widened the recall to include all of their previously recalled brands manufactured at any time including those manufactured prior to December 3, 2006.

38.    On April 5, 2007, the Menu Foods Defendants expanded the recall again to include an even broader range of dates and varieties.  A Menu Foods Income Fund press release, on April 5, 2007 announced "an expansion of its recall to include all products manufactured with wheat gluten purchased from ChemNutra Inc. which Menu Foods' records show was first used on November 8, 2006 and last used on March 6, 2007."

39.    Menu Foods' recall expansion was announced on the heels of the recall announced by ChemNutra, Inc., a Nevada company, of wheat gluten it imported from Xuzhou Anying Biologic Technology Development Co. Ltd., located in China. ChemNutra, Inc. also admitted publicly that it supplied the recalled wheat gluten to pet food makers.

40.    Menu Foods has yet to clarify what substance or combination of substances in its pet food (whether melamine and/or otherwise) has led to the illness and death of companion animals in Colorado and around the nation.

41.    In the wake of the unprecedented pet food recall, Menu Foods has nonetheless disclosed that expansion plans for its pet food operations are under consideration, despite

quality concerns with their products and the extensive damage they have caused to pet-owning consumers.

42.     The delay in issuing the recall and Menu Foods' receipt of complaints about "cuts and gravy" style pet food as early as December 2006, coincide with the eligibility of the principals, investors and/or trustees of Menu Foods Defendants to obtain cash disbursements from the Fund, which were only recently unattainable.  Due to Menu Foods Income Fund's previous debt ratio, it was prohibited from making monthly cash or other distributions, to its members including holders of its Trust Units or Class B Exchangeable Units between December 2005 until September 2006, and to which its members had become accustomed prior to that time.  The individuals presiding on the board of trustees of the Fund, and the directors and/or officers of Menu Foods GenPar Limited, which administers the Fund, are investors in Menu Foods and hold such Units.

43.     This is not the first time that Menu Foods Defendants have put their corporate welfare, financial interest, or public image ahead of safety concerns.  On May 19, 2004, the Food & Drug Administration issued a Warning Letter to one of the Menu Foods Defendants revealing its "significant deviation" from federal regulations pertaining to prohibited animal proteins in ruminant feed.  The regulation(s) were intended to prevent the establishment and spread of Bovine Spongiform Encephalopathy ("BSE").[1]  Though the regulation(s) required the use of a cautionary statement regarding BSE, the Menu Foods Defendant introduced the product into interstate commerce in October 2003 without the required statement.  (Center for Veterinary Medicine, Fiscal Year 2004 Report.)

---

[1]   Menu Foods' source raw materials from various animal groups including those from ruminant animals are, or were susceptible to contracting BSE.

44.    The Menu Foods violation occurred despite the fact that in 2003, BSE discovered

in the United States and in Canada resulted in the closure of the Mexican and Canadian

borders to United States-made pet food and a temporary suspension of Menu Foods

product shipments from its Canadian operations.

45.    Moreover, Menu Foods was all too aware of the federal regulation pertaining to

BSE prior to October 2003. In February 2003, Menu Foods, as a member of the Board of

Directors for the Pet Food Institute, unsuccessfully lobbied the FDA not to adopt the

regulation that it later violated, expressly on grounds that such a caution statement on pet

food product labels would cause consumer perception regarding product safety to decline

and result in economic damage. (Pet Food Institute Letter of February 4, 2003

responding to FDA Notice of Proposed Rulemaking entitled "Substances Prohibited

From Use in Animal Food or Feed; Animal Proteins Prohibited in Ruminant Feed.")

***Allegations Pertaining to the P&G Defendants.***

46.    Menu Foods makes the P&G Defendants' pet food products at issue which are

subject to the recall.

47.    Jim McClurg, an Iams' Product Supply Vice President, has previously stated,

"We are committed to providing dog and cat owners with top quality wet and dry

nutrition, which is why we selected Menu Foods, a very strong company with core

competencies in the production of wet dog and cat foods." (http://www.menufoods.

com/ir/arc_26.html, retrieved on Mar 23, 2007 via www.google.com, cached entry.)

48.    Defendants, P&G and Iams have virtually admitted that cats and dogs in the

United States have become sick and developed signs of kidney failure including loss of

appetite, vomiting, and lethargy from consuming its pet food products at issue.

10

***Plaintiff Tompkins' Allegations.***

49.    For the time period between September 2006 and March 2007, including between
January and February 2007, and between September 2006 and December 2006, Plaintiff
Tompkins purchased pet food products at issue, including, without limitation, individual
pouches as well as 12-pack variety packages of Iams Select Bites in Sauce, and Iams
Choice Cuts in gravy, at Safeway, Petco, and King Snoopers retail stores in Denver,
Colorado, which were ultimately subject to the Menu Foods recall and which her
previously healthy British Blue-Grey Shorthair cat, Grover, ate daily.

50.    On the morning of February 26, 2007, Grover began showing symptoms of
lethargy and loss of appetite and increased litter box use. Plaintiff Tompkins took Grover
to the veterinarian for examination on February 28, 2007. Thereafter, veterinary tests
revealed acute renal and kidney failure caused by eating Defendants' pet food product.
Grover was hospitalized for four days after his initial veterinary visit on Wednesday,
February 28, 2007. When Grover came home after his veterinary hospitalization the
following Saturday, March 3, 2007, he continued on an intensive mandatory regimen of
daily subcutaneous fluids, twice-daily dosages of the antibiotic Clindamycin, and daily
dosages of the phosphate binding medication Epakitin. This protocol was continuous for
the three-week period prior to Grover's death. Grover suffered endlessly from the time
he first fell ill with continued weight loss, dehydration, and ulcerations in his mouth and
throat making it very difficult to eat. Grover drank water to excess and continued to use
his litter box constantly.

51.    Plaintiff Tompkins unwittingly continued feeding Grover the subsequently-
recalled Iams food when Grover came home from his hospitalization on March 3, 2007.

When the recall was announced, Plaintiff Tompkins threw away all of the recalled food that she had remaining and switched Grover to a non-recalled food on the day of the recall, March 16, 2007.

52.    As a result of harm to his health inflicted by the pet food products at issue, Grover was euthanized on March 21, 2007 at the advice, and with the assistance, of Plaintiff Tompkins' veterinarian.

***General Allegations.***

59.    The pet food products at issue are defectively designed and/or made, and are toxic, poisonous or unreasonably dangerous to pets who consume it.  Due to the composition of the products (e.g., the concentration of a tainted wheat gluten ingredient), the products are not usable for their intended purposes, and when used, cause a significant risk of bodily harm, including severe or fatal bodily harm (such as renal or kidney failure, or death) to the pet.

60.    Said defects and inherent dangers existed in the pet food products at issue at the time the products left the control of the Defendants, and at the time Plaintiff and the members of the Classes purchased said products (though they could not discover same at the time they purchased and used the products).

61.    Defendants had a duty of care to Plaintiff and purchasers of the pet food products at issue; Defendants had a duty to design, manufacture, test, market, distribute, label, promote, and sell, a safe product and/or ingredient, and a duty to warn or disclaim any potential dangers which derive from the unreasonable dangers posed by the product and/or ingredient.

12

62.   As a result of the Defendants' respective acts and omissions alleged herein,

Plaintiff and other pet owners have been damaged, for example, in amounts equal to the

cost of the pet food products at issue, veterinarian bills, cremation and/or funeral

expenses, and other, compensatory and punitive damages.

63.   Plaintiff and other pet owners were, in effect, stuck with opened and/or unopened

"leftovers" of recalled pet food products at issue following the Menu Foods recall,

disposed of the food after learning of the recall, and/or had their pets consume pet food

not fit for consumption that they purchased from Defendants, Petco Animal Supplies,

Inc., Petco Animal Supplies Stores, Inc., Safeway Inc., and The Kroger Co., and other

retailers.

## CLASS ALLEGATIONS

64.   Plaintiff Tompkins brings this action individually and pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of following presently defined Classes:

   a.   Menu Foods Class:  All persons and entities who, in the State of Colorado,

   purchased the pet food products at issue, defined herein as any pet food product

   recalled by Menu Foods Income Fund in March or April 2007.

   b.   P&G Class:  All persons and entities who, in the State of Colorado, purchased

   Eukanuba® and Iams® brand pet food products recalled by Menu Foods Income

   Division in March or April 2007.

   c.   Retail Purchase Class:  All persons and entities who purchased, from a retail

   store operated and/or owned by Petco Animal Supplies, Inc., Petco Animal

   Supplies Stores, Inc., Safeway Inc., or The Kroger Co., a pet food product

   recalled by Menu Foods Income Division in March or April 2007.

13

66.    Excluded from each Class are the officers and employees of each of the Defendants, Plaintiff's counsel, and any member of the judiciary presiding over this action.

67.    Plaintiff meets the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

68.    Plaintiff does not know the exact size of the Classes, since this information is largely in Defendants' exclusive control. But based on the nature of the trade and commerce involved, Plaintiff believes that the Classes each number at least in the thousands and that the members of each class are geographically dispersed throughout the State of Colorado, or alternatively, throughout the U.S. Therefore, joinder of the members of each Class would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

69.    Plaintiff's claims are typical of other Class members' claims because all the respective Class members were injured through the uniform misconduct described herein.

70.    Common legal and factual questions among and within the respective classes exist, such as:

    a.    Whether the respective Defendants caused to be manufactured, distributed, marketed, and sold, the pet food products at issue;

    b.    Whether the pet food products at issue are unreasonable dangerous or unfit for pet consumption; and

    c.    Whether Defendants' conduct caused injury in fact to Plaintiffs and the members of each Class.

14

71.    Plaintiff can and will fairly and adequately represent and protect the respective
Class members' interests, and have no interests that conflict with or are antagonistic to
the any of the Class members' interests.  One or more of Plaintiff's attorneys are
experienced and competent in class action litigation.

72.    Class certification of the respective, alternative classes is appropriate under Rule
23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior
procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

      a.    Common questions of law and fact overwhelmingly predominate over any
      individual questions that may arise among or within the respective classes and,
      consequently, enormous economies to the court and parties exist in litigating the
      common issues, for each class, on a class-wide basis  instead of on a repetitive
      individual basis;

      b.    Class treatment is required for optimal deterrence against, and compensation
      for, Defendants' wrongful conduct alleged herein; and

      c.    The aggregate volume of the claims of each Class, whether considered in a
      national class or, alternatively, in a Colorado class, coupled with the economies of
      scale inherent in litigating similar claims on a common basis, will enable this case
      to be litigated as a class action on a cost-effective basis, especially when
      compared with repetitive individual litigation, and no unusual difficulties are
      likely to be encountered in this class action's management in that all legal and
      factual questions are common to each Class.

73.    Plaintiff's claims are typical of the other Class members' claims because
Defendants injured Plaintiff's and the respective Class members in the same manner.

74.    Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of

Civil Procedure because prosecution of separate actions would create a risk of

adjudication with respect to individual members of the respective classes, which may, as

a practical matter, dispose of other class members' interests who aren't parties to the

adjudication or which may substantially impair or impede individual class members'

ability to protect their interests.  Separate actions prosecuted by individual class members

would also create a risk of inconsistent or varying adjudications, which would establish

incompatible standards of conduct for Defendants.

75.    Class certification, whether as a Menu Foods Class, P&G Class, or Retail

Purchase Class, is appropriate under Rule 23(b)(2) of the Federal Rules of Civil

Procedure because Defendants have acted on grounds generally applicable to the

members of each Class.

## CAUSES OF ACTION

76.    Each of the preceding paragraphs are re-alleged and incorporated as if set forth in

full in each of the following Causes of Action, which are, to the extent the law requires,

alleged in the alternative.

## FIRST CAUSE OF ACTION – NEGLIGENCE

### (On Behalf of the Menu Foods Class, and the P&G Class, Against Menu Foods, P&G, and Iams)

77.    Menu Foods made the pet food subject to the Menu Foods recall and purchased

by Plaintiff Tompkins and the Menu Foods Class.

78.    Defendants, The Procter & Gamble Company and The Iams Company, produced,

marketed and sold the pet food recalled by Menu Foods and sold under their brand

16

names, e.g., Iams and Eukanuba, and purchased by Plaintiff Tompkins and the P&G

Class.

80.    The Defendants captioned in this Cause of Action breached their respective duties

and duties of care to Plaintiff and other purchasers of said pet food products at issue,

(e.g., to warn, and to design, manufacture, produce, market, distribute, supply and/or sell

pet food products and/or ingredients at issue that are reasonably safe for pet consumption,

for their intended purposes, and for purposes that do not injure the users of the products)

including their respective aforementioned duties (*see* STATEMENT OF FACTS,

*General Allegations*).

81.    Said Defendants' respective breaches of the aforementioned duties in the course

of failing to warn, and in designing, making, producing, distributing, supplying,

marketing and/or selling the pet food products, caused Plaintiff and members of the Menu

Foods Class, and the P&G Class actual and compensatory damage.

## SECOND CAUSE OF ACTION – STRICT LIABILITY

### (On Behalf of the Menu Foods Class Against Menu Foods)

82.    Menu Foods caused pet food products at issue to be placed into the stream of

commerce and sold to Plaintiff Tompkins and other members of the Menu Foods Class.

84.    Plaintiff and the members of the Menu Foods Class could not, and should not

have reasonably expected the pet food products, which they purchased and were

thereafter recalled, to contain poisonous and/or abnormally dangerous ingredient(s) that

the products did and/or were likely to contain.

85.    Plaintiff and the above-named Class members were damaged as a proximate

result of said the above-named Defendants' respective conduct.

86.    Said Defendants, as a result of their above-described conduct, are strictly liable to Plaintiff and the above-named Class members.  (*See* STATEMENT OF FACTS, *General Allegations*).

### THIRD CAUSE OF ACTION – BREACH OF WARRANTY

#### (On Behalf of the P&G Class Against P&G and Iams)

87.    Defendants, P&G and Iams, expressly warranted that their now-recalled pet food products are pet food and are nourishing, healthy, and/or suitable for consumption.

88.    However, the recalled P&G and Iams products purchased by Plaintiff Tompkins and the P&G Class are not in fact pet food nor are they nourishing, healthy, or suitable for consumption; the products are poisonous, are unfit for consumption, and/or are likely to cause illness or death when consumed.

91.    Had Plaintiff or the other members of the P&G Class known these facts, they would never have purchased the Iams and Eukanuba products.

92.    Defendants, P&G, and Iams, breached their respective implied warranties of merchantability and fitness for a particular purpose, and express warranties, which are part of the basis of the bargain for the product purchase.

93.    As a proximate result of Iams' and P&G's aforesaid breaches of warranty and conduct, Plaintiff Tompkins and the P&G Class were damaged.

### FOURTH CAUSE OF ACTION – BREACH OF CONTRACT

#### (On Behalf of the Retail Purchase Class Against Petco, Safeway, and Kroger)

95.    Plaintiff Tompkins purchased pet food sold by Defendants Petco Animal Supplies, Inc., Petco Animal Supplies Stores, Inc., Safeway Inc., and The Kroger Co. (the "Retail Defendants") inclusive of the time period between September 2006 and the end of

February 2007. The other members of the Retail Purchase Class bought pet food products at issue from one or more of the Retail Defendants between December 3, 2006, and March 16, 2007.

96.    Said purchases were made from the Retail Defendants based on the mutual understanding of the parties (i.e., of Plaintiff Tompkins and each Retail Purchase Class member, and of each Retail Defendant), at the time of sale, that the food was, as represented, safe for consumption and was in fact truly pet "food".

97.    However, the Retail Defendants sold the pet food products at issue, which were not safe for consumption, were not in fact truly pet "food" and caused dogs and cats to become ill and/or die.

98.    Each of the Retail Defendants, by selling Plaintiff and Retail Purchase Class members pet food that in fact was not truly pet "food", and/or was not safe for consumption, breached their contracts for the sale of the pet food.

99.    As a result of said breach and/or material mutual mistake of fact of the parties, Plaintiff and other Retail Purchase Class members were damaged, and/or the contracts for the sale of the pet food should be rescinded and Plaintiff and the Retail Purchase Class are due a full refund of the pet food products purchased from the Retail Defendants and restitution or compensatory damages resulting therefrom.

**FIFTH CAUSE OF ACTION – COMMON LAW FRAUD**

(On Behalf of the Menu Foods Class Against Menu Foods)

100.    Menu Foods had a duty to disclose that the pet food products at issue are defective, dangerous, and/or cause or reasonably could cause pet injury or death.

101.    However, each of the Menu Foods Defendants failed to disclose these facts to members of the Menu Foods Class including Plaintiff, and intended that they rely on these omitted facts at the time they purchased the pet food products at issue at retail inclusive of the time period from February 20, 2007 to March 16, 2007.

102.    Plaintiff Tompkins and the Menu Foods Class would have never purchased these products had they known these omitted facts – and many of their pets, like Grover, would not have died or suffered injury as a result.

103.    Plaintiff Tompkins and other Menu Foods Class members were damaged as a proximate result of these omissions (*see* ¶¶ 101-102).

### SIXTH CAUSE OF ACTION – UNJUST ENRICHMENT

#### (On Behalf of Each Class Against Each Respective Defendant)

104.    The revenues and profits flowing to and retained by the Defendants from the sale of the recalled pet food products at issue inured to their benefit.

105.    Each of the Defendants unjustly retained gains arising from the sale of said pet food products, which were unsafe for pet consumption and not fit for sale, were less than the product advertised, represented, and purchased and/or were not fit for their ordinary and intended purpose.

106.    The Defendants' retention of financial gains from the sale of said pet food products has unjustly enriched each of them at the expense of Plaintiffs and the members of each Class, who are entitled to restitution, and disgorgement of the Defendants' respective ill-gotten gains arising from the sale of the products as a result.

107.    The Defendants' retention of monies received by virtue of their roles in causing

said pet food products to be sold to Plaintiffs and the other class members violates the

principles of equity and good conscience.

### JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all matters so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in the respective

Class members' favor and against Defendants, as follows:

A.    That this Court enter an order certifying this action as a class action for
each Class defined above or that may be defined in the course of this
action, appointing Plaintiff Tompkins as class representative for the Menu
Foods Class, the P&G Class, and the Retail Purchase Class, and Plaintiff's
counsel as class counsel;

B.    That this Court find that the Defendants violated applicable law and are
therefore liable under said laws as alleged above;

C.    That this Court declare that Menu Foods acted with reckless disregard for
Plaintiff Tompkins and members of the Menu Foods Class, and that
Plaintiffs and the members of each Class are entitled to a purchase price
refund of the pet food products at issue;

D.    That this Court award Plaintiff and the members of each Class damages,
including actual, incidental, compensatory, consequential and future
damages (e.g., cost of veterinarian bills, medication, cremation and funeral
expenses, and pet food) and/or refunds of the pet food products at issue,
interest thereon, and injunctive relief including medical monitoring relief
for affected surviving pets;

E.    That this Court award punitive damages against Menu Foods for Causes of
Action above for which such damages may be had;

F.    That this Court determine that Defendants were unjustly enriched and
award restitution and/or disgorgement of their respective ill-gotten gains;

G.    That this Court require each Defendant to account for all revenues and/or
profits improperly received as a result of the aforementioned conduct,

enjoin each Defendant from dispersing said monies, and impose a constructive trust on said monies;

H.    That this Court award Plaintiff's counsel reasonable attorneys' fees and costs; and

I.    That this Court order any other relief as it deems just, equitable, and proper.


Dated:  April 11, 2007                    Respectfully submitted,

                                          EMILY TOMPKINS, individually and on behalf all others similarly situated

                        By:    _____
                                Jennifer Reba Thomaidis, Esq.
                                **Thomaidis Law, LLC**
                                1866 Vine Street
                                Denver, CO 80206
                                Telephone: (303) 322-4355
                                Facsimile:  (303) 322-4354
                                jennifer@thomaidislaw.com

                                Frank Jablonski, Esq.
                                Noah Golden-Krasner, Esq.
                                **Progressive Law Group, LLC**
                                354 West Main Street
                                Madison, WI 53703
                                Telephone: (608) 258-8511
                                Facsimile:  (608) 442-9494
                                frankj@progressivelaw.com
                                noah@mainstreetjustice.com

                                Ilan J. Chorowsky, Esq.
                                **Progressive Law Group, LLC**
                                1130 North Dearborn Street,
                                Suite 3110
                                Chicago, IL  60610
                                Telephone: (312) 643-5893
                                Facsimile:  (312) 643-5894
                                ilan@progressivelaw.com

22

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

THOMAIDIS LAW LLC

/s/ Jennifer R. Thomaidis

_____

Jennifer Reba Thomaidis
Attorney for Plaintiff
1866 Vine Street
Denver, Colorado 80206
(303) 322-4355
(303) 522-4354 – FAX
jennifer@thomaidislaw.com

and I hereby certify that I have mailed or served the document or paper to the following participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

THOMAIDIS LAW LLC

/s/ Jennifer R. Thomaidis

_____

Jennifer Reba Thomaidis
Attorney for Plaintiff
1866 Vine Street
Denver, Colorado 80206
(303) 322-4355
(303) 522-4354 – FAX
jennifer@thomaidislaw.com

23